UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD OWINGS,<br><br>            Plaintiff,<br><br>v.<br><br>HUNT & HENRIQUES, *et al.*,<br><br>            Defendants. | Civil No. 08cv1931-L(NLS)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

In this fair debt collection practices action, Plaintiff claims, among other things, that Defendants obtained a default judgment against him to collect a debt based on untrue representations to the court that he was not in the military service. At the time, Plaintiff was in active service with United States Army National Guard. He claims that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("Rosenthal Act"). The parties filed cross-motions for summary judgment. Based on the reasons which follow, each motion is **GRANTED IN PART AND DENIED IN PART**.

Plaintiff argues that he is entitled to summary adjudication in his favor on the issue of Defendants' liability. Defendants oppose this contention and argue that a judgment should be entered in their favor because Plaintiff presented no evidence of causation or damages, and because they are entitled to the bona fide error defense.

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d)(1).

Summary judgment or adjudication of issues is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The burden on the party moving for summary judgment depends on who bears the burden of proof at trial. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). When the moving party would not bear the burden at trial, then he or she can meet its burden on summary judgment by pointing out the absence of evidence with respect to any one element of the claim. *See Celotex*, 477 U.S. at 325.

If the movant meets its burden, the burden shifts to the nonmovant to show summary adjudication is not appropriate. *Celotex*, 477 U.S. at 317, 324. The nonmovant does not meet this burden by showing "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must go beyond the pleadings to designate specific facts showing there are genuine factual issues which "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

When ruling on a summary judgment motion, the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a summary judgment motion. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment.[1] *See* Fed. R. Civ. P. 56(e).

The mere fact the parties filed cross-motions "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). "[E]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Furthermore, the court must consider evidence submitted in support of and in opposition to both motions before ruling on either one. *Id.*

Plaintiff allegedly failed to pay a credit card debt owing G.E. Money Bank. The issue whether the debt was Plaintiff's is disputed and is not a part of this case. It is undisputed, however, that the account was in Plaintiff's name. (Joint Statement of Undisputed Fact in Supp. of Parties' Cross Mot. for Summ. J. ("Joint Statement") at 1-2.) Defendant Arrow Financial Services ("Arrow") acquired the account. Arrow engaged Defendant Hunt & Henriques ("Hunt"), a law firm, to collect it.

Plaintiff claims that in attempting to collect the debt from him, Defendants violated the FDCPA and the Rosenthal Act. The parties agree that the FDCPA applies insofar as Plaintiff was a consumer, Defendants were debt collectors, and the underlying obligation was a debt as the terms are defined in the statute. (Joint Statement at 1.)

With respect to the Rosenthal Act, the parties agree that Plaintiff was a debtor, the debt at issue was consumer credit, and Arrow was a debt collector as these terms are defined by the statute. (Joint Statement at 1.) They disagree, however, whether the statute applies to Hunt.

---

[1] Defendants filed copious evidentiary objections and a motion to strike objectionable evidence. Unless expressly noted otherwise herein, the objections are overruled.

The definition of "debt collector" under California Civil Code Section 1788.2(c) expressly excludes "an attorney or counselor at law."[2] A creditor's counsel retained for the purpose of collecting a debt is not a "debt collector" within the meaning of the Rosenthal Act. *Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1518, 1526 (1988). In *Carney*, the action, which included violations of the Rosenthal Act, was filed against the creditor, the law firm retained by the creditor, an attorney and a secretary of the law firm for actions taken by the law firm in collecting the debt. 206 Cal. App. 3d at 1518. The court held that dismissal of the claim was proper as to all defendants because attorneys are not subject to the Rosenthal Act. *Id*. at 1526. Plaintiff's argument that the Rosenthal Act excludes attorneys but not law firms is therefore rejected. Hunt cannot be held liable under the Rosenthal Act.[3]

The parties also disagree whether Arrow can be held vicariously liable for Hunt's FDCPA violations. Defendants argue that Arrow cannot be held vicariously liable because Plaintiff presented no evidence that Arrow exercised any control over Hunt in collecting the debt. This argument is rejected. In the FDCPA context, "Congress intended the actions of an attorney to be imputed to the client on whose behalf they were taken." *Fox v. Citicorp Credit Serv., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). It is undisputed that Hunt's actions in attempting to collect were on Arrow's behalf. (Joint Statement at 2 & Ex. U (Dep. of Tonia Easterling at 79); *see also* Ex. T.) Accordingly, to the extent Hunt is held liable for any FDCPA violations in collecting the debt, Arrow is vicariously liable.

It is undisputed that Hunt filed a lawsuit against Plaintiff in San Bernardino Superior Court, alleging Plaintiff failed to pay the debt. Hunt based its choice of venue on an address which was not Plaintiff's residential address. At the time the lawsuit was filed, Plaintiff did not reside in San Bernardino County. (Joint Statement at 1.) The FDCPA requires, and the parties do not dispute, that under the circumstances of thus case, the action should have been filed in the

---

[2] However, attorneys may be disciplined by the State Bar of California for Rosenthal Act violations. Cal. Bus. & Prof. Code § 6077.5.

[3] Plaintiff does not contend, and the evidence filed in support and opposition to the cross-motions does not suggest, that any Rosenthal Act violations were committed by Arrow. However, because neither side addresses this issue, the court does not reach it.

Riverside County where Plaintiff resided. *See* 15 U.S.C. §1692i(a). Accordingly, it is undisputed that the action was filed in the wrong venue under the FDCPA. "FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1004 (9th Cir. 2008); *see also id.* at 1005 ("The FDCPA makes debt collectors liable for violations that are not knowing or intentional.") To the extent Plaintiff seeks summary adjudication of the issue that Defendants violated 15 U.S.C. Section 1692i(a), his motion is **GRANTED**.

The proof of service filed in the action states that Plaintiff was served at 568 Casey Court in Colton, California by substituted service on March 22, 2008. (Ex. M). However, at that time, Plaintiff resided in a different county at a different address – 34581 Sagebrush Lane, Winchester, California. (Ex. W, Joint Statement at 1.) Plaintiff claims that he was not properly served. Because he does not contend that this violated the FDCPA, the claim is based entirely on the Rosenthal Act. (*See* Pl.'s Opp'n to Defs' Mot. for Summ. J. and Reply in Supp. of Pl.'s Mot. for Summ. J. (docket no. 33) at 4.) For the reasons discussed above, to the extent he seeks summary adjudication of the issue that Defendants violated the Rosenthal Act when they failed to properly serve him, his motion is **DENIED**.

Plaintiff did not appear in the collection action. On July 25, 2008 Hunt applied for a default judgment. In support of the application, Michael Hunt, a partner at Hunt, declared under penalty of perjury, "No defendant named in item 1c of the application is in the military service so as to be entitled to the benefits of the Servicemembers Civil Relief Act (50 U.S.C. § 501 *et seq*.)." (Ex. F & Joint Statement at 3.) No other declarations were filed regarding Plaintiff's military status, and Defendants did not advise the court about it in any other way. On July 30, 2008 a default judgment was entered against Plaintiff. At all relevant times, Plaintiff was in the United States Army National Guard. At the time Defendants applied for default, Plaintiff was on active duty at the United States/Mexico border. (Joint Statement at 3.)

A material issue in this case is whether Plaintiff was entitled to the protections of the Servicemembers Civil Relief Act, 50 App. U.S.C.§501 *et seq*. ("Act"), so as to render Hunt's declaration false, misleading or unfair under the FDCPA. As pertinent here, the purpose of the

Act is "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 App. U.S.C. §502(2); *see also Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993) ("the complete legislative history confirms a congressional intent to protect all military personnel on active duty, just as the statutory language provides").

The Act expressly provides for protection of servicemembers against default judgments in civil actions where the servicemember did not appear, including in State courts. 50 App. U.S.C. §§521(a) & 512. Specifically, the Act requires the plaintiff seeking a default judgment against a servicemember to file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 App. U.S.C. §521(b)(1)(A).

> If in an action covered by this section it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. . . .

50 App. U.S.C. §521(b)(2).

Consistent with the Act, California courts require a plaintiff seeking a default judgment to declare whether the defendant is in military service for purposes of the Act. Hunt declared that Plaintiff was not in the military service. (Ex. F & Joint Statement at 3.)

Defendants quibble over whether Plaintiff was in the military service as the term is defined in the Act. In the case of a servicemember in the National Guard, the Act defines "military service" as including:

> service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.

50 App. U.S.C. §511(2)(A)(ii).

Plaintiff was ordered to active duty in the National Guard at the United States/Mexico border with Operation Jump Start. (Ex. A & Joint Statement at 3.) Plaintiff's orders were for a period of more than 30 days – from April 13, 2008 through July 15, 2008. (Ex. A & Joint

/ / / / /

/ / / / /

Statement at 3.) They were issued under 32 U.S.C. Section 502(f).[4] (Ex. A & Joint Statement at 3.) Section 502(f)(2)(A) provides for "[s]upport of operations and or missions undertaken by the member's unit at the request of the President or Secretary of Defense."

Consistently, the orders in this case were authorized by the President. (*See* Ex. L (110th Cong., 2d Sess., H. Res. 1306 (referencing Operation Jump Start and noting that "on May 15, 2006, President George W. Bush assigned the National Guard the mission to assist Customs and Border Protection along the southwest border"); Ex. D (Aug. 5, 2006 statement of President George W. Bush in his radio address that he had fulfilled his pledge to deploy National Guard troops to the border through the operation Jump Start); Ex. E (Governor's General Order No. 2006-01 deploying National Guard troops to Operation Jump Start "[i]n light of the request by the President of the United States.").)

It is also beyond dispute that the operation was federally funded. (Joint Statement at 3.) In November 2007, the President signed into law the Defense Appropriations Bill (H.R. 3222), which provided emergency spending for the operation.

Furthermore, Plaintiff served during a national emergency. The President declared a national emergency on September 14, 2001 in response to the September 11, 2001 terrorist attacks. (*See* Ex. HH.) Based on the finding that the terrorist threat continued, the emergency was extended on August 28, 2008 until a year beyond September 14, 2008. (*Id.*) The parties disagree whether Plaintiff's orders were issued "for purposes of responding to" this national emergency. Plaintiff presented evidence that Craig Duehring, Principal Deputy Assistant Secretary of Defense, believed the operation was part of the Global War on Terrorism. (Ex. G.)

---

[4] Section 502(f) provides in pertinent part:

(1) Under regulations to be prescribed by the Secretary of the Army or Secretary of the Air Force, as the case may be, a member of the National Guard may . . . be ordered to perform training or other duty in addition to that prescribed under subsection (a).

(2) The training or duty ordered to be performed under paragraph (1) may include the following:

(A) Support of operations or missions undertaken by the member's unit at the request of the President or Secretary of Defense. . . .

In addition, the court takes judicial notice of the presentation to the Congressional Committee on Homeland Security on February 9, 2007 by the Secretary of the Department of Homeland Security. He characterized the operation as part of the agency's mission to "protect our nation from dangerous people." Michael Chertoff, Statement for the Record, U.S. H.R. Comm. on Homeland Security (Feb. 9, 2007). Defendants have presented no evidence to suggest that the operation was not in response to the declared national emergency. To the extent Plaintiff seeks summary adjudication of the issue that he was entitled to the protections of the Act, his motion is **GRANTED**.

Plaintiff also maintains that Defendants violated California Military and Veterans Code Section 402(a), which provides similar protections to servicemembers as the Act. Defendant's argument that this legal theory was not presented until the summary judgment motions is rejected. (*See* First Am. Compl. at 5-6.)

Defendants further argue that Hunt's declaration in support of the application for default judgment did not violate section 402(a) because it referenced only the Act and not section 402(a), as the requisite California Judicial Council Form referenced only the Act. This argument is rejected. Like the Act, section 402(a) requires a party applying for a default judgment to disclose to the court whether the defendant, who had not appeared, is in the military service, so that the court may decide whether the procedural protections for servicemembers must be implemented. *See* Cal. Mil. & Vet. Code § 402(a). Hunt incorrectly declared that Plaintiff was not in the military service.

Plaintiff argues that Hunt's declaration violated 15 U.S.C. Sections 1692e and 1692f. Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Because the FDCPA is a strict liability statute, Defendants' lack of intent to deceive or mislead is irrelevant to Plaintiff's case in chief. *See Reichert*, 531 F.3d at 1004, 1005.

In opposition Defendants do not argue that the declaration was not false, misleading or unfair for purposes of sections 1692e and 1692f. Their only argument is that a state law violation cannot form the basis for an FDCPA violation. A debt collection practice in violation of state law is not *per se* an FDCPA violation. *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996). However, it may constitute a violation if it independently violates the FDCPA. *Id.* For example, if the debt collector's representation is false, deceptive or misleading, it can constitute an FDCPA violation regardless of whether it also constitutes a violation of state law. *See id.* Hunt's declaration was false and misled the state court into believing that Plaintiff was not in the military service. Defendants' argument that Hunt's violation of section 402(a) cannot form the basis for an FDCPA violation is therefore rejected. To the extent Plaintiff requests summary adjudication that Hunt's declaration violated 15 U.S.C. Sections 1692e and 1692f, his motion is **GRANTED**.

Defendants argue, however, that summary judgment should be granted in their favor because Plaintiff presented no evidence of causation or damages. The FDCPA provides for damages against any debt collector who fails to comply with it. 15 U.S.C. § 1692k. A plaintiff may recover actual damages sustained "as a result of" a debt collector's failure to comply. *Id.* § 1692k(a)(1). Defendants argue that it was Plaintiff's failure to pay the debt rather than the default judgment that caused him injury. This argument cannot raise a genuine issue, because it is irrelevant whether Plaintiff paid the debt. "The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Serv. Group*, 677 F.2d 775, 777 (9th Cir. 1982).

Plaintiff claims that Defendants' violations damaged his military career. On August 7, 2008 Plaintiff's commanding officer issued a "Memorandum for Record" stating, "It has come to my attention that on August 7, 2008 . . . you have incurred *a court sanctioned judgment* to collect un unpaid debt." (Ex. B (emphasis added).) As a result, Plaintiff could no longer be considered for promotions or other "favorable actions." (*Id.*) Plaintiff's evidence is sufficient to raise a genuine issue of material fact whether Defendants' failures to comply with the FDCPA, which precluded him from defending himself in the collection action, caused actual damage. To

the extent Defendants seek summary judgment on the ground that Plaintiff has presented no evidence of causation and damages, their motion is **DENIED**.

Last, Defendants argue that they are entitled to summary judgment in their favor based on the bona fide error defense.[5] The defense is based on 15 U.S.C. Section 1692k, which provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Bona fide error is "an affirmative defense, for which the debt collector has the burden of proof." *Reichert*, 531 F.3d at 1006.

Defendants deny that their violations were intentional. (Ex. T (Dep. of Michael Hunt at 80-81).) On the other hand, Plaintiff points to the evidence that Arrow's own account showed Plaintiff's correct address and his military status . (Ex. DD, Ex. U.) In addition, Hunt's confirmation of account information with Experian came back indicating Plaintiff was in the military. (Ex. AA at 3.) Hunt's own account notes showed that Plaintiff was in the military. (Ex. II.) Moreover, the process server's Declaration of Due Diligence showed Plaintiff's military status. (Joint Statement at 2.) Plaintiff's evidence supports a reasonable inference that Defendants knew Plaintiff's correct address and military status, but failed to file the collection action in the proper venue and properly serve Plaintiff to preclude him from defending it, and then intentionally misled the court into believing that Plaintiff was not in the military to obtain a default judgment. Based on the evidence presented by the parties, there is a genuine issue of material fact for purposes of the bona fide error defense whether Defendants' violations were intentional.

In addition to proving lack of intent, "[t]o qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors." *Reichert*, 531 F.3d at 1007. Defendants ague they had policies and procedures in place to ensure filing debt collection actions in the proper venue and avoid filing

---

[5] Plaintiff has not requested summary adjudication of the defense. The court therefore does not reach this issue.

them against members of the active military.

Arrow's policy was to rely on the creditor's information about the account, including the debtor's residential address. (Ex. Z.) In this case, the creditor also provided Arrow with copies of credit card statements which included the same address as the creditor's information. (*Id*.) Subsequently, Arrow hired Hunt to collect the debt. (*Id*.) Later, Arrow added Plaintiff's correct address and military status to the account notes. (Ex. DD.)

Neither reliance on a creditor's representation or advice of counsel is alone sufficient to meet the burden with respect to the defense. *See Reichert*, 531 F.3d at 1006-07 (creditor's representation); *Baker*, 677 F.2d at 779 (advice of counsel). The debt collector must show that the reliance was reasonable "on the basis of procedures maintained to avoid mistakes" which were put into place. *Reichert*, 531 F.3d at 1006-07. Arrow provided no evidence of any procedures it maintained to avoid mistakes about the debtor's residential address and military status. It provided no reason for its reliance on the creditor's information, especially in light of the information which it later added to the file. Last, it provided no evidence to indicate whether it had a policy to forward any changes to the file to its attorneys. Arrow therefore failed to meet its burden for a summary judgment in its favor.

Hunt's policies and procedures pertaining to filing of debt collection actions consisted of attending educational conferences and seminars presented by attorney associations in the debt collection practice area and reviewing the publications issued by these organizations. (Ex. AA at 2-3.) Hunt "provides ongoing training to its employees on the Fair Debt Collection Practices Act and related state collection laws." (*Id*. at 3.) This evidence is conclusory and inadequate as a basis for the bona fide error defense.

> If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of procedures reasonably adapted to avoid any such error must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the mistake entitled to be treated as one made in good faith.

*Reichert*, 531 F.3d at 1007 (internal quotation marks and citation omitted).

With respect to a debtor's residential address, Hunt's policy was to rely on the client's

account information and send correspondence to debtors with a request for address correction. (Ex. AA at 2.) In this case, Hunt received the information from Arrow. (*Id*.) It then confirmed the incorrect residential address by checking Experian. (*Id*.) Subsequently it mailed two letters to the incorrect address. They were not returned as undeliverable and no forwarding address was provided by the post office. (*Id*.) Hunt then apparently concluded it had the right address. The evidence of Hunt's policies and procedures regarding the choice of venue is inadequate because it does not explain how they were adapted to avoid error.

With respect to screening for debtors in the military, Hunt trained its employees regarding screening policies and procedures. (Ex. AA at 3.) "Prior to approving an account for legal action" and "[b]efore requesting a default judgment," Hunt "reviews its internal account notes to determine whether it possesses any information that may indicate that a debtor . . . may be a member of the armed forces. For example, the firm's account notes may indicate that the debtor may be employed by a branch of the armed forces." (*Id*.) This was the case here. The information Hunt obtained from Experian, Hunt's own account notes and the process server's affidavit all indicated that Plaintiff was in the military. (Ex. II, Ex. AA at 3, Joint Statement at 2.) But Hunt nevertheless missed it. Hunt's evidence, although it states that the procedure is to check the account notes, says nothing about how this procedure was "adapted to avoid the error." *See Reichert*, 531 F.3d at 1007.

Beyond the procedure of checking account notes, Hunt relied on the debtor or his family to notify it of the military status:

> When Hunt & Henriques sends correspondence to a debtor, it places "address correction requested" notices on its envelopes; if the debtor has updated his or her address with a military address . . ., it will be transmitted to Hunt & Henriques by the post office. More typically the firm is often notified by the debtor or a member of the debtor's family that the debtor is in the military, in response to a communication from Hunt & Henriques.

(Ex. AA at 3.) Defendants cite no legal authority, and the court is aware of none, where the bona fide error defense is based on, in a manner of speaking, the victim's fault for not notifying the debt collector of his military status. This would be particularly unlikely in this case, where all of Hunt's communications with Plaintiff went to the wrong address.

Last, "if one of the firm's collectors makes contact with the debtor, the collector is supposed to confirm the debtor's employment status." (Ex. AA at 3.) This procedure is irrelevant in this case. There is no evidence that any of Hunt's collectors attempted to contact Plaintiff other than by sending mail to the wrong address. Like Arrow, Hunt has failed to meet its burden on the bona fide error defense.

Based on the foregoing, the parties' cross-motions for summary judgment are **GRANTED IN PART AND DENIED IN PART** as follows:

1. The issue whether Defendant Hunt & Henriques can be held liable for violations of the Rosenthal Act is summarily adjudicated in Defendants' favor.

2. The issue whether Defendant Arrow Financial Services can be held vicariously liable for the FDCPA violations committed by Defendant Hunt & Henriques is summarily adjudicated in Plaintiff's favor.

3. The issues whether Defendants violated the FDCPA for filing a debt collection action against Plaintiff in the wrong venue and obtaining a default judgment against Plaintiff by incorrectly representing that Plaintiff was not in the military service are summarily adjudicated in Plaintiff's favor.

4. There are genuine issues of material fact whether and to what extent Plaintiff sustained actual damages as a result of Defendants' failure to comply with the FDCPA.

5. There is a genuine issue of material fact whether the bona fide error defense, 15 U.S.C. §1692k(c), applies to any of Defendants' violations.

**IT IS SO ORDERED**.

DATED: September 3, 2010

M. James Lorenz
United States District Court Judge